UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

       v.                                         No. 12-cr-69-01PB

NAZAR LOPUSHANSKY

### INDICTMENT

The Grand Jury charges:

       At all times material to this Indictment:

       1.      In general, a performance bond is a guarantee to the owner of a construction project ("the obligee") that the contractor will complete the contract. If the contractor fails to complete the contract, the obligee is permitted to file a claim with the bond company to require the bond company to pay for the contract to be completed. Similarly, a payment bond is a guarantee to the obligee that the contractor will pay for the labor and materials that are required to complete the contract. If the contractor fails to pay any of those expenses, an unpaid vendor or an unpaid worker can file a claim with the bond company to recover their losses. To acquire a performance bond and a payment bond, a contractor to whom a construction contract has been issued must pay a premium to a bond company. For purposes of this indictment, a performance bond and a payment bond are collectively referred to "a bond."

       2.      When a bond company pays a claim, it is entitled to recover the amount of that expense from the contractor to whom the bond was issued. For that reason, a bond company's evaluation of the risk associated with a bond substantially depends on the financial condition of the contractor seeking to purchase the bond.

3. Substantial repairs or improvements to buildings owned by the State of New Hampshire were made by private contractors under contracts awarded by the New Hampshire Department of Administrative Services, Bureau of Public Works ("BPW"). Only contractors who were pre-qualified by the State of New Hampshire, Department of Transportation, Department of Finance and Contracts ("NH-DOT") were permitted to bid on the state contracts.

4. The defendant, NAZAR LOPUSHANSKY, was the owner and president of a construction company, Engelwood Construction Company, Inc. ("Engelwood"). Engelwood maintained a business office in Manchester, New Hampshire.

5. In around February 2009, LOPUSHANSKY knowingly caused a Certified Public Accountant to prepare a 2008 year end financial statement ("the 2008 statement") for Engelwood that falsely stated that Engelwood possessed cash assets totaling $476,951 and that the assets included a $450,000 subordinated loan that LOPUSHANSKY provided to Engelwood in October 2008. LOPUSHANSKY intended to use the 2008 statement to falsely induce bond companies to issue bonds to Engelwood.

"The LOB Project"

6. On or about April 13, 2009, LOPUSHANSKY caused a pre-qualification application, a copy of the 2008 statement and other information about Engelwood to be submitted to the DOT so that Engelwood would be permitted to bid on state contracts.

7. On or about April 13, 2009, the DOT caused a letter ("the April 13-letter") to be delivered by the Postal Service to Engelwood's office. The April 13-letter stated that Engelwood was pre-qualified to bid on certain types of state contracts valued up to $4 million.

8. In and around July 2009, LOPUSHANSKY requested Bond Safeguard Insurance Company ("Bond Safeguard") to provide bonds to Engelwood. In support of that request, LOPUSHANSKY caused a copy of the 2008 statement and other information about Engelwood to be submitted to Bond Safeguard. Relying on the information provided in the 2008 statement - including the false information related to the value of Engelwood's cash assets and the $450,000 subordinated loan - Bond Safeguard agreed to consider, on a case by case basis, providing bonds to Engelwood for construction contracts worth up to $1 million, and $2.5 million in the aggregate.

9. In and around July 2009, the BPW solicited bids from pre-qualified contractors, like Engelwood, to replace the slate roof on the Legislative Office Building ("the LOB project") in Concord, New Hampshire.

10. On or about July 2009, LOPUSHANSKY submitted a bid on the contract for the LOB project to the BPW. The bid stated that Engelwood would complete the contract for approximately $492,323.

11. On or about July 31, 2009, the BPW caused a letter ("the July 31-letter") to be delivered by the Postal Service to Engelwood's office. The July-31 letter stated that the contract for the LOB project had been awarded to Engelwood, subject to the Governor's Executive Council's approval and Engelwood's acquisition of a bond for the project.

12. On about August 10, 2009, Bond Safeguard issued a bond for the LOB project to Engelwood. If Bond Safeguard knew the 2008 statement overvalued Engelwood's cash assets by approximately $450,000, it would not have issued the bond for the LOB project to Engelwood.

13.     On or about August 20, 2009, the BPW caused another letter ("the August 20-letter") to be delivered by the Postal Service to Engelwood's office.  The letter stated that the BPW's contract with Engelwood for the LOB project had been approved by the Governor's Executive Council.

14.     In and around October 2009, the BPW rescinded its contract with Engelwood. The BPW and Bond Safeguard then negotiated an agreement by which Bond Safeguard agreed to pay part of the cost for the LOB project to be completed.

COUNTS ONE - THREE
MAIL FRAUD  - 18 U.S.C. 1341

15.     From in and around January 2009 to in and around October 2009, in the District of New Hampshire and elsewhere, the defendant,

NAZAR LOPUSHANSKY,

knowingly and intentionally devised, and intended to devise, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and attempting to do so, did cause matter to be sent and delivered by the Postal Service, and caused such matter to be delivered according to the directions thereon, as follows:

| Count | Approximate Date of Mailing | Description of Mail Matter |
|---|---|---|
| One | 04/13/09 | The April 13-letter |
| Two | 07/31/09 | The July 31-letter |
| Three | 08/02/09 | The August 20-letter |

All in violation of Title 18, United States Code, Section 1341.

## COUNTS FOUR - SIX
## MAIL FRAUD - 18 U.S.C. 1341

16.	Paragraphs 1 - 5 and 8 of the Indictment are re-alleged and incorporated as set forth in full herein.

### The Town Hall Project

17.	On or about August 24, 2009, LOPUSHANSKY provided information about Engelwood's business activities to the Town of Moultonborough, New Hampshire, ("the Town") in order to qualify to submit a bid on a contract to repair the roof on the Moultonborough Town Hall ("the Town Hall project").

18.	On or about September 3, 2009, the Town caused a notice ("the September 3-notice") to be delivered by the Postal Service to Engelwood's office. The September 3-notice stated that Engelwood was qualified to bid on the contract for the Town Hall project.

19.	On or about September 24, 2009, LOPUSHANSKY submitted a bid on the contract for the Town Hall project to the Town. The bid stated that Engelwood would complete the contract for approximately $68,900.

20.	On or about October 2, 2009, the Town caused a letter ("the October 2-letter") to be delivered by the Postal Service to Engelwood's office. The October 2-letter stated that the contract for the Town Hall project had been awarded to Engelwood, subject to Engelwood's acquisition of a bond for the project.

21.	On or about October 3, 2009, the contract was expanded to include additional repairs to the Town Hall's roof. Therefore, on or about October 5, 2009, the Town caused another letter ("the October 5-letter") to be delivered by the Postal Service to Engelwood's office. The October 5-letter stated that a contract in the amount of $91,650 had been awarded to

Engelwood by the Town, subject to Engelwood's acquisition of a bond for the project.

22. On about October 7, 2009, Bond Safeguard issued a bond for the Town Hall project to Engelwood. If Bond Safeguard knew that the 2008 statement overvalued Engelwood's cash assets by approximately $450,000, it would not have issued the bond for the Town Hall project to Engelwood.

23. In an around August 2010, the Town filed a claim with Bond Safeguard to recover expenses the Town incurred to complete the Town Hall project. Thereafter, the Town and Bond Safeguard negotiated an agreement by which Bond Safeguard agreed to pay the claim.

24. From in and around January 2009 to in and around August 2010, in the District of New Hampshire and elsewhere, the defendant,

NAZAR LOPUSHANSKY,

knowingly and intentionally devised, and intended to devise, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and attempting to do so, did cause matter to be sent and delivered by the Postal Service, and caused such matter to be delivered according to the directions thereon, as follows.

| Count | Approximate Date of Mailing | Description of Mail Matter |
|---|---|---|
| Four | 09/03/09 | The September 3-notice |
| Five | 10/02/09 | The October 2-letter |
| Six | 10/05/09 | The October 5-letter |

All in violation of Title 18, United States Code, Section 1341.

DATED: May 30, 2012

**A TRUE BILL**

/s/ Foreperson of the Grand Jury
Foreperson of the Grand Jury

JOHN P. KACAVAS
United States Attorney

By:/s/ Robert M. Kinsella
    Robert M. Kinsella
    Assistant United States Attorney

-7-